IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CALVIN DENNIS, | JURY TRIAL DEMANDED |
| Plaintiff, | |
| v. | |
| | Civil Action No. |
| JOM ENTERPRISES, LLC d/b/a GLOBAL DRYING EQUIPMENT, JACK O. MCMILLAN and CHARLES BLACKHURST, | |
| Defendants | |

## COMPLAINT FOR DAMAGES

COMES NOW Calvin Dennis ("Plaintiff"), through his undersigned counsel, and files this lawsuit against JOM Enterprises, LLC d/b/a Global Drying Equipment ("JOM"), Jack O. McMillan ("McMillan"), individually, and Charles Blackhurst ("Blackhurst"), individually, (collectively "Defendants"), and shows the Court as follows:

## NATURE OF COMPLAINT

1.

Plaintiff brings this action to obtain full and complete relief for Defendants' failure to pay overtime wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and for Defendants' decision to terminate

1

Plaintiff for complaining about Defendants' failure to pay overtime wages in violation of the FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3).

## JURISDICTION AND VENUE

2.

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

3.

Pursuant to 28 U.S.C. § 1391 and Local Rule 3.1(B)(1)(a), venue is proper in this Court because the unlawful employment practices described herein were committed within the Atlanta Division of the United States District Court for the Northern District of Georgia.

## PARTIES

4.

Plaintiff is a citizen of the United States of America and a resident of the State of Georgia.

5.

According to the website of the Georgia Secretary of State, Defendant JOM is a Georgia corporation with a principal place of business at 227 Sandy Spring Place, NE, Suite 363, Sandy Springs, Georgia, 30328.

6.

Defendant JOM may be served with process by delivering a copy of the Summons and Complaint to its registered agent, Attorney Merlin M. Lawrence at the law office of Friedman, Dever & Merlin, LLC located at 5555 Glenridge Connector, NE, Suite 925, Atlanta, Georgia, 30342.

7.

Defendant McMillan owns JOM, and acted indirectly or directly in the interests of an "employer" in relation to Plaintiff.

8.

As the owner of JOM, McMillan had ultimate control over the day-to-day operations at JOM, including decisions affecting compensation that were instrumental in causing the FLSA violations alleged herein (e.g., misclassifying Plaintiff as an independent contractor and as an exempt employee in order to avoid paying overtime, refusing to pay Plaintiff (and other workers) overtime for all hours worked over forty (40) in a workweek, determining Plaintiff's work schedule, etc.).

9.

Defendant McMillan may be served with process by delivering a copy of the Summons and Complaint to him personally at his home address, JOM's principal office address, or JOM's warehouse located at 700 Wharton Drive, Atlanta, Georgia, 30336.

3

10.

Defendant Blackhurst is the Director of Operations at JOM, and acted indirectly or directly in the interests of an "employer" in relation to Plaintiff.

11.

Defendant Blackhurst was involved in the day-to-day operations at JOM, including decisions affecting compensation, hiring and firing workers, determining work schedules, etc.

12.

Defendant Blackhurst may be served with process by delivering a copy of the Summons and Complaint to him personally at his home address, at JOM's principal office address, or JOM's warehouse located at 700 Wharton Drive, Atlanta, Georgia, 30336.

13.

Defendants are governed by and subject to the FLSA.

14.

At all relevant times, JOM was and continues to be an enterprise engaged in interstate commerce.

15.

4

At all relevant times, JOM has had at least two (2) employees engaged in interstate commerce or in handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce.

15.

JOM operates in the commercial restoration business and provides professional grade drying and climate control equipment and services to clients "anywhere—especially in the Southeast." <u>See</u> JOM's website available at http://www.globaldryingeqpt.com/why_global_drying_equipment.

16.

At all relevant times, JOM has had at least $500,000.00 in annual gross volume of sales made or business done.

17.

At all relevant times, Plaintiff was directly or indirectly "engaged in commerce" and subject to individual coverage under the FLSA.

18.

Plaintiff repeatedly traveled out-of-state to perform restoration services on behalf of JOM.

19.

At all relevant times, Defendants were an "employer" as that term is defined by 29 U.S.C. § 203(d).

20.

At all relevant times, Defendants acted directly or indirectly in the capacity of an "employer" in relation to Plaintiff.

21.

At all relevant times, Plaintiff was an "employee" of Defendants as that term is defined by 29 U.S.C. § 203(e).

22.

From in or about April 2012 to in or about November 2014 ("Period 1"), Defendants misclassified Plaintiff as an independent contractor. Despite Plaintiff's "independent contractor" classification, however, Defendants treated Plaintiff as an employee.

## STATEMENT OF FACTS

23.

From April 2012 to April 7, 2015, Plaintiff worked for Defendants as an Operation Technician. Plaintiff's job duties involved manual labor, including operating, maintaining and repairing commercial drying equipment (e.g., commercial dehumidifiers).

24.

During Period 1, Plaintiff was misclassified as an independent contractor and paid on an hourly basis at a rate of $20.00.

25.

Throughout Plaintiff's employment, including during Period 1, Defendant treated Plaintiff as an employee.

26.

Throughout Plaintiff's employment, including during Period 1, Defendant determined Plaintiff's work conditions and work schedule, and closely supervised Plaintiff's work.

27.

Throughout Plaintiff's employment, including during Period 1, Plaintiff had no opportunity for profit or loss, and he provided no investment—Defendants provided all of the equipment needed to perform the job.

28.

Throughout Plaintiff's employment, including during Period 1, Plaintiff was held out to clients as a JOM employee. For example, Plaintiff wore a shirt with JOM's logo.

29.

During Period 1, Plaintiff consistently worked more than forty (40) hours at least once a month. On these occasions, Plaintiff was only paid straight time for all hours worked over 40 in a workweek.

30.

At all relevant times, Plaintiff was not paid for time spent traveling to and from job sites outside the warehouse.

31.

As of November 2014 ("Period 2"), JOM converted its workers (including Plaintiff) from an hourly basis to a salaried basis. Plaintiff's salary was determined using his current hourly rate of pay (i.e., $20.00) multiplied by 40 hours. See "New Compensation Structure," attached as Exhibit "A."

32.

McMillan explained that the changes to the compensation structure were designed to "increase[] hours but also limiting the cost of overtime hours for the company." See Exhibit "A."

33.

Under JOM's New Compensation Structure, JOM promised to pay "overtime on a straight-time basis for all weekly overtime hours over fifty (50)." See Appendix 1. In other words, "[e]mployee is not compensated for the first 10 hours of overtime on a weekly basis, but is compensated for overtime above 10" hours at straight time. See Exhibit "A."

34.

After JOM enforced its New Compensation Structure, which Plaintiff expressly opposed, Plaintiff was reclassified as an employee.

35.

After Plaintiff was reclassified as an employee, Plaintiff was required to work considerably more overtime inside and outside the warehouse each workweek, and was not paid time and one-half his regular hourly rate of pay for each hour over 40 per workweek.

36.

Plaintiff worked on average 46 hours during those workweeks when he worked inside the warehouse.

37.

Plaintiff worked well over 50 hours during those workweeks when he worked outside the warehouse.

38.

At all relevant times, whenever Plaintiff worked outside the warehouse, he was required to stay at or within hailing distance of the job site in order to monitor the commercial drying equipment around the clock each and every day. During these periods, Plaintiff took a break/nap when he could, which was not very often and not for very long.

39.

Plaintiff was not compensated for the entire 24-hour on-call period.

40.

Plaintiff was instructed to report no more than eight (8) hours per day regardless of the number of hours he actually worked.

41.

On a few occasions, McMillan allowed Plaintiff to report up to ten (10) hours per day, which was still considerably less than Plaintiff's actual work hours.

42.

During Period 2, whenever Plaintiff reported more than 50 hours in a workweek, JOM only paid Plaintiff straight time for some (not all) hours worked over 50 in a workweek.

43.

At all relevant times, Plaintiff reported to McMillan and/or Blackhurst.

44.

If there was an issue at work (including any issues with compensation), Plaintiff addressed the issue with McMillan and/or Blackhurst.

45.

Plaintiff frequently complained to McMillan and Blackhurst about the lack of overtime compensation.

46.

On April 7, 2015, Plaintiff complained to Blackhurst about the lack of overtime compensation in his paycheck. Blackhurst stated that Plaintiff had agreed

to the New Compensation Structure (which Plaintiff had not). When Plaintiff told Blackhurst that he needed to fix his paycheck, Blackhurst fired Plaintiff.

47.

At all relevant times, Defendants failed to accurately track all hours worked by Plaintiff in violation of the FLSA's recordkeeping requirements.

48.

After the transition from hourly to salary in November 2014, Plaintiff was not required to report his work hours unless he worked more than 50 hours. However, even when Plaintiff worked more than 50 hours, Plaintiff was not allowed to report more than 8 hours per day (or 10 hours per day on a few occasions).

49.

During Period 2, Plaintiff never worked less than 40 hours in a workweek. Plaintiff estimates that he worked on average 46 hours per workweek when he worked inside the warehouse (for which Plaintiff was not paid overtime), and well over 50 hours per workweek when he worked outside the warehouse (for which Plaintiff was paid straight time for some (not all) hours worked over 50).

50.

Defendant willfully violated the FLSA. Defendants knew or should have known that Plaintiff was entitled to be paid overtime at all times throughout his employment at JOM.

51.

Defendants purposefully misclassified Plaintiff as an independent contractor and paid him straight time for some (not all) hours worked over 40 in a workweek.

52.

As of November 2014, when Defendants reclassified Plaintiff as an employee, Plaintiff's job duties remained the same and Plaintiff was subject to the same degree of control as when Plaintiff was an "independent contractor."

53.

Defendants acknowledged that the intent of the New Compensation Structure was to "reduce exposure to overtime costs" by forcing Plaintiff to work more overtime hours for little to no compensation. See Exhibit "A."

54.

Since Defendants acted willfully, a three-year statute of limitations period (as opposed to a two-year statute of limitations period) is appropriate here.

55.

On September 24, 2015, Plaintiff and JOM (through its legal counsel, Amanda S. Thompson) agreed to toll the statute of limitations by entering into a

Tolling Agreement. <u>See</u> "Tolling Agreement," attached as Exhibit "B." Pursuant to the Tolling Agreement, the statute of limitations was tolled from September 24, 2015 through November 30, 2015. <u>See</u> Exhibit "B."

56.

Accordingly, Plaintiff's period of recovery spans from September 24, 2012 to Plaintiff's termination on April 7, 2015.

## COUNT ONE
## Fair Labor Standards Act
### (Failure to Pay Overtime Compensation)

57.

Plaintiff reasserts and incorporates by reference paragraphs 23 through 56 of this Complaint as if fully set forth herein.

58.

At all relevant times, Defendants violated the FLSA by failing to pay Plaintiff time and one-half his regular hourly rate of pay for all hours worked over 40 in a workweek.

59.

During Period 1, Defendants purposefully misclassified Plaintiff as an independent contractor in order to avoid paying Plaintiff time and one-half his regular hourly rate of pay for all hours worked over 40 in a workweek.

60.

During Period 2, when Defendant reclassified Plaintiff as a salaried employee, nothing changed with respect to Plaintiff's job duties and the degree of control Defendants exercised over Plaintiff's work. The only difference was that Plaintiff started working more overtime with little to no compensation.

61.

Defendants implemented a New Compensation Structure in November 2014 to limit JOM's overtime obligations under the FLSA. JOM explained that the purpose of the New Compensation Structure was to "reduce[] exposure to overtime costs." See Exhibit "A."

62.

Under the New Compensation Structure, JOM started paying Plaintiff a salary in the amount of $800.00 per workweek. This amount was determined using Plaintiff's regular hourly rate multiplied by a 40-hour workweek. In addition, Defendant promised to "pay Plaintiff on a straight-time basis for all weekly overtime hours over 50." See Exhibit "A." In reality, however, JOM only paid Plaintiff straight time for some (not all) hours worked over 50 in a workweek.

63.

Plaintiff opposed JOM's New Compensation Structure. Specifically, unlike his colleagues, Plaintiff refused to sign a "contract" agreeing to the terms of the

New Compensation Structure, and repeatedly complained to McMillan and Blackhurst about the lack of overtime pay.

64.

At all relevant times, Defendants required, suffered and/or permitted Plaintiff to work more than 40 hours per workweek without paying Plaintiff time and one-half his regular hourly rate of pay for each hour worked over 40 in a workweek.

65.

Plaintiff was not compensated for time spent traveling to and from job sites outside of the warehouse.

66.

When Plaintiff worked on-call, he was required to stay at or within hailing distance of the job site in order to monitor the commercial drying equipment around the clock each and every day. During these periods, Plaintiff took a break/nap when he could, which was not very often and not for very long. Nonetheless, Plaintiff was instructed to report no more than 8 hours per day (and up to 10 hours per day on a few occasions).

67.

Defendants acted with willful disregard of its obligations under the FLSA. Defendants knew or had reason to believe that Plaintiff was misclassified as an independent contractor and as an exempt employee.

68.

Defendants failed to maintain accurate records of Plaintiff's actual work hours in violation of the FLSA's recordkeeping requirements.

69.

As the direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered damages, including without limitation, lost wages, liquidated damages in an equivalent amount, attorneys' fees and costs incurred in connection with this claim.

## COUNT TWO
## Fair Labor Standards Act
### (Retaliation)
70.

Plaintiff reasserts and incorporates by reference paragraphs 23 through 56 of this Complaint as if fully set forth herein.

71.

On April 7, 2015, Plaintiff complained to Blackhurst about the lack of overtime compensation in his paycheck. Blackhurst told Plaintiff that he had agreed to the New Compensation Structure (which Plaintiff had not). When

Plaintiff told Blackhurst that he needed to fix his paycheck, Blackhurst refused and fired Plaintiff.

72.

As the direct and proximate result of Defendants' unlawful retaliatory conduct, Plaintiff has suffered damages, including without limitation, lost wages, liquidated damages in an equivalent amount, emotional distress and mental anguish, attorneys' fees and costs incurred in connection with this claim.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for relief as follows:

A. For a trial by jury;

B. For a finding that Defendant violated Plaintiff's rights as set forth herein;

C. For a judgment in Plaintiff's favor for unpaid wages, back pay, front pay, liquidated damages, emotional distress damages, prejudgment interest on unpaid wages, and reasonable attorneys' fees and costs in accordance with the FLSA, 29 U.S.C. § 216(b), and all other legal and equitable relief as may be appropriate to effectuate the purposes of the FLSA; and

D. For such other and further relief as this Court deems proper and just.


Date: December 1, 2015

Respectfully submitted,

SMITH LAW, LLC

By:   /s/ Louise N. Smith
Louise N. Smith
Georgia Bar No. 131876
William J. Smith
Georgia Bar No. 710280
*Attorneys for Plaintiff*

P.O. Box 1396
Dacula, GA 30019
T: (678) 690-5299
F: (678) 889-2890
louise@smithlaw-llc.com
william@smithlaw-llc.com

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Fed.R.Civ.P. 38(b), Plaintiff demands a trial by jury.

Respectfully submitted

SMITH LAW, LLC

By:   /s/ Louise N. Smith
Louise N. Smith
Georgia Bar No. 131876
William J. Smith
Georgia Bar No. 710280
*Attorneys for Plaintiff*

P.O. Box 1396
Dacula, GA 30019
T: (678) 690-5299
F: (678) 889-2890
louise@smithlaw-llc.com
william@smithlaw-llc.com

## <u>FONT AND POINT CERTIFICATION</u>

The undersigned counsel for Plaintiff hereby certifies that the within and foregoing **COMPLAINT FOR DAMAGES** was prepared using Times New Roman, 14-point font in accordance with LR 5.1(B).

This 1st day of December, 2015.

Respectfully submitted,

SMITH LAW, LLC

By:    /s/ Louise N. Smith⎯⎯⎯⎯⎯
         Louise N. Smith
         Georgia Bar No. 131876

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I have caused or will cause service to issue upon the

Defendant to this Action with the foregoing **COMPLAINT FOR DAMAGES** by

personal service pursuant to Fed. R. Civ. P. 4. within the time allowed by Fed. R.

Civ. P. 4(m).

This 1st day of December, 2015.

Respectfully submitted,

SMITH LAW, LLC

By:   <u>/s/ Louise N. Smith            </u>
Louise N. Smith
Georgia Bar No. 131876